Good morning. I'm Jeff Parker, appearing for Appellant Robert B. Gillum. At issue in this case is Mr. Gillum's standing to challenge a system of highway project evaluation criteria devised by the Alaska Department of Transportation to implement what four times it has admitted is its racially discriminatory intent by using one set of project evaluation criteria for remote projects that ignores costs of projects and by using another for the interconnected rural urban road system where those sets of criteria is used does consider costs. Why does your client have standing? He has standing because he raises both facial and as applied challenges. He has standing for the under two lines of standing cases at issue. One is the Jacksonville-Grotz line of cases. Jacksonville and Grotz. There there was no injury in fact for purposes of standing met by a barrier to equal treatment. A plaintiff does not have to show that the particularized individual denial of a benefit. This case is also consistent with Turner and his project. I'm sorry, you've got to tell me a little more about it. Sure. What exactly is his harm? His harm arises both facially as I said and... We're now not there yet. We're asking... What is the injury? What is the injury? Okay. There's no such thing as applied injury or facial injury. Injury is injury. What is his harm and how will the relief he seeks be ameliorated, ameliorate the harm? I think I understand your question. Short and simple English. Okay. The injury that he suffers from the system in general is that when limited federal highway funds of the surface transportation program that are finite are used in a manner that as the state says requires that some of those funds be spent for... Does he have any... I understand your position. It seems to me to be the weaker of your two positions. Okay. This one has no... Doesn't seem to meet injury and safety requirements. Does he have a particular project that he wants to have built? Does he have a need for a road that isn't getting built? Does he have any... I mean, that's quite a side of the question of whether a particular citizen has an interest in having a road built sufficient to have standing. But let's ask the first question. He hasn't alleged anywhere that there is a road that he needs, wants, or has a right to that isn't being built. In fact, as the record below shows, he did propose an alternative project on the Cook Inlet-Bristol Bay Corridor, which was the bridge across the Naknek River as a much more useful expenditure of federal highway funds. He did that through his participation in the federal planning process. Yeah, but, you know, we're wasting time here. This is obviously not sufficient for standing because he thinks he can run the government better than somebody else. I'm sorry? The fact that he thinks he can run the government better than people who are elected does not give him standing. I think we're wasting time here. Well, okay. What's the other? This is what we call taxpayer standing, and the Supreme Court no longer rejected that unless it is a religion case. So it's just a waste of time. What is the other basis of standing? The other is the Ileana Non-Dalton Project, where... Why don't you talk English? Just tell me what his injury is. I mean, how is he harmed? How will the lawsuit ameliorate the harm? Okay. That project will... That project was scored under the remote criteria, which ignores costs of the project. That project, if built by bridging the New Halen River, will injure his interest in his property and his use of that property and his use and enjoyment of the public lands of the area. But his interest there is essentially environmental. Let's assume that that's a sufficient interest. He owns land, although I gather his land is fairly far from this road. It's like 15 miles or so. Is that right? It's 10 to 15 miles north, but if you bridge the New Halen River, then you have ATV access and boat access, which you presently don't have because of the downstream poles. And that bridge has not... There's also the question of what's been built and what hasn't been built. Is the bridge built yet? No, it is not. But the road... Part of the road's been built. Three miles was built to Spex, north of the Iliamna Airport. Then about five miles was built, was partially built. Some culverts were installed. There was partial bed grade, et cetera. The next six miles, simply a blade was dropped on a caterpillar and six inches of thunder was peeled to the bridge site where no bridge exists. Then it's an ATV trail to Nundle. Okay. So at this point, there's no usable road... That's correct. ...that would get you across the river. That's correct. And his problem is that if people can get across the river, they're going to impinge on the pristineness of the area in which he has his house. Yes. That's an environmental concern, essentially, or an aesthetic concern or whatever. And a property concern. I'm sorry? And a property concern. But they're not impinging directly on his property. It's simply on his preferred use of the area really around his property, not his property directly. Is that right? Well, people will be able to come to his property, yes, and use it along the shoreline. So... I'm sorry. What does that mean? He owns property in Lake Clark National Park on Lake Clark. When you bridge the Newhalen River at the south end of the park, then you have access up the west side of Lake Clark. By ATVs 10 to 15 miles away. And by boat, yes. ATVs use vast areas. How would they use his property? Sorry? I heard you say that they're going to use his property. How are they going to use his property? I didn't say that they will. I will say that they can. They can't do it now. It's more difficult. Yeah, it's very difficult. It's more difficult now. You can't get across the Newhalen River. You can come by helicopter. You can come by boat. Actually, you can't come by helicopter for most purposes. People do it because of the state fish and game regulation prohibits helicopters in that area. But it can be reached by boat now, can't it? There's a falls below the bridge site. I see. So they could then, if the bridge is built, they could carry the boat in a trailer across the bridge and then put it in below the falls. That's correct. Or above the falls. Above the falls. So then the question becomes, what is the connection between this alleged injury and the claimed racial violation, racial criteria, which are not on their face, racial criteria anyway. They are criteria about rural as opposed to urban areas. Remote as opposed to rural, urban, interconnected. Yes. But since we're just talking standing now, the problem I'm having is really, I guess, best categorized as the zone of interest credential requirement of standing. Let's assume he has an injury and let's assume he's better off without the road than with the road. But the injury, the cause of actions he's pursuing have to do,  not a road going to be built directly, but rather whether it's going to be built under X criteria or Y criteria, essentially. Which he's claiming are racially discriminatory, right? Yes, that's correct. So if there is a road, he's going to be able to use the road like anybody else, right? So there's no race discrimination against him in that sense. Yes, not in the use of the road. Where the race discrimination occurs is the criteria are proxies. Remote is a proxy for native in this case. And that's basically what the four documents in the record by DOT say. Well, what they actually said was that there's a, as I understand it, that Title VI has a disparate impact regulation, which is, by the way, not enforceable by private right of action under 1983. So that's another problem. I have it down the road. I don't see how you have a cause of action here, but we're not there yet. Actually, they didn't say disparate impact, Your Honor. They said that Title VI and the executive order at issue, environmental justice, requires that some federal highway funds be made available for projects that serve minority communities and prohibit the state from denying funds to such projects based on a poor benefit cost ratio. Because otherwise there would be a disparate impact. I mean, that's the context here, yes? I think it's intentional discrimination when you use a misinterpretation of what Mr. Gillen believes. But at any rate, again, we're not there yet. We're not up to the question of whether you have a cause of action under Title VI, which, as I understand it, and in a case in which I rigorously dissented, you probably don't. But leaving all that aside for now, what about the question of how these environmental interests connect up, in the zone of interest sense, with the protections accorded by Title VI, which is your primary cause of action, as I understand it? Yes. They connect up, I believe, Your Honor, because transportation planning statutes, the zone of interest of those statutes includes environmental concerns. The statutes, particularly at 23 U.S.C. 133, for example, have a number of environmental types of projects that are authorized, such as wetland restoration banks, et cetera. Yes, but that's not Title VI. That's not what you're suing. Right. You're suing under Title VI. You're not suing under the Federal Transportation Statute. I understand. But you have the implementation here, through the transportation planning requirements of Title XXIII, of a system of using project evaluation criteria that are based on the state's view of Title VI as requiring, in effect, a reverse discrimination program. But that's only a violation. You can only bring a lawsuit for violation of Title VI if they're violating your Title VI rights. If they have an erroneous view of Title VI, that's not your problem. Your problem is are they violating your Title VI rights? No? Yes, I would agree. And Mr. Gillum's Title VI rights are violated when projects that he would seek,  to show that the projects that he would use go unfunded or delayed. Is there anything in the complaint that covers that? You told me that there's something in some letter where he mentions a project. There's nothing in the complaint that suggests any particular project. I think that is the case, yeah. There is nothing in the complaint. I still don't quite get it. The fact that he has some other project he would prefer the money be used for, how does that connect up with his Title VI injury? I mean, he may not like a road there because he doesn't want people near his house, but what does that have to do with Title VI? Well, I think what it has to do with Title VI is that the funds, as I said initially, are finite. You can't spend a dollar bill twice. So essentially, your argument has to be that we don't see standing on this question of other funds. I don't know what you mean by other funds here. If we don't see you having a sufficient insurance back from the failure to use funds for something else, then you don't have standing. I mean, that's really what you're saying because you keep backing into that. Right, and we did plead in the complaint that ADOT's system diminishes funds for those other funds. How do we know that if he succeeds in diverting funds for this project, that it will go into this other project that your client prefers? Maybe they'll... Excuse me? Or other projects, yes. Well, but that wouldn't help you because what you're saying is the injury is that he would rather have this other project. You keep saying that. That's your injury. But, of course, the funding could be abrogated from this project and they could just send the money back to Washington or they could decide to use it on projects in different parts of Alaska altogether. There's no guarantee that stopping this project will increase funding for your client's preferred project, is there? I do think that factually, yes, that will occur because as the deposition of Jeff Otteson shows, two points. One is that there are far more projects and there is money available for projects. And two, if you... Mr. Otteson testified that unless you had this system of... this dual system for evaluating remote projects and those on the interconnected system, the remote projects could not compete, his words, in the same pot of funds. Now, our view is projects should compete on transportation needs, on safety concerns, on commerce and... Did you hear my question? Sure. I'm sorry. Did you hear my question? Perhaps I didn't, Your Honor. I'm sorry. It's always good to hear the question and try to understand it before trying to give an answer. Sure. If this project stops, how do we know that the money will be used for the project your client prefers? First, do you understand the question? Yes. Okay. Okay. What we know is that if we get a system by which all projects are evaluated free of racially motivated criteria, the best projects will rise to the fore free of those criteria. So the answer is we don't know? No, I think we know what Mr. Otteson has said, and that is that... Well, what he said is that there are lots of projects and there's not money for all of them. So my question is, assuming that the money is not used on this project, is there any guarantee that the money will actually then be used for this other project your client prefers? The money is a pool of funds. It's a yes or no question. Can you answer with yes or no? Is there any guarantee that the money will be used for the project your client prefers? I believe there is a guarantee that more money... There is a likelihood that more money will be used. Let's try a yes or no, okay? Okay. Next thing I want coming out of your mouth, this is the only word, yes or no. If the money is diverted from this project, it's not used for this project, is there any guarantee that it will be used for the project your client prefers? Only two answers, yes or no, or I don't know. No, because it's subject to a planning process. Okay. So given that there is no such guarantee, how can you use your client's preference for this other project as a basis for standing? Because what I believe you're talking about, Your Honor, is redressability. And redressability requires a likelihood that the plaintiff's injury will be redressed. This has a prior problem, which is that you don't even, as we established earlier, you have not even in the complaint established that there is a project that he would prefer or why he prefers it or how it would benefit him to have it or anything that you would need to allege an injury of back with regard to any particular project. Is that right? There's nothing in the complaint about any of that. About a particular other project? A particular other project, why he wants it, how it interests him not to have it, or anything like that, or anything that distinguishes him from anybody else with regard to any particular project before we ever get to redressability. Okay. We did identify conservation projects that are under 23 OC 133 that could be funded. We didn't identify particular projects. We identified types of projects. Particular projects. I mean, if you've seen a complaint in, which with Paz's mustering or Lujan in that line of cases, you have to say, you know, I live in such and such a place, and I deal with such and such a location, and because of X and Y, it would be helpful to me to have this happen. And you haven't done any of that. Under the approving, generalized allegations, as we all know, are sufficient for Not in terms of an injury of back, but you just haven't alleged with regard to any, in this context where you're challenging a broad governmental policy, you have to show how it's going to affect you. And I think we have to allege, not show. That's a burden of proof, and that's a proof of trial burden. And the case law, I believe, is clear that you have to allege injury in fact. But not just by saying I've had an injury in fact. You have to say, give some facts that show that if proven, would demonstrate that you do. With regard to this question of other funds, you just haven't done that. I think we understand your position. Thank you. My name is Larry McKinstry. I'm an assistant attorney general, and I represent Michael Barton, the commissioner of the Department of Transportation. How are you, Mr. McKinstry? I'm sorry? How are you? I'm fine, thank you. Is there anything you've heard this morning that you think isn't adequately answered in your brief? Not at all, Your Honor. Okay. Thank you. Case file will stand submitted. We'll next hear argument in the Alaska Constitutional Legal Defense and Conservation Fund versus Lewin. I'm not sure. Did she resign? I think she did. We'll have to ask her. Absolutely. Is it still normal?
judges: Kozinski, Berzon, Tallman